UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

**"IN ADMIRALTY"**

| | |
|---|---|
| GOOD MARINER LLC,              : | |
|     Plaintiff,                 : | |
|                            : | |
| v.                            : | **C.A. No:** |
|                            : | |
| ACCELERANT SPECIALTY INSURANCE : | |
| COMPANY, SEDGWICK CLAIMS      : | |
| MANAGEMENT SERVICES, INC.,       : | |
| and CERTAIN UNDERWRITERS AT     : | |
| LLOYD'S OF LONDON SUBSCRIBING    : | |
| TO COVER NOTE NO. B0507RN2300289, : | |
|     Defendants.               : | |

**COMPLAINT**

Plaintiff, GOOD MARINER LLC ("Plaintiff"), by and through undersigned counsel, hereby sue Defendants—ACCELERANT SPECIALITY INSURANCE COMPANY, SEDGWICK CLAIMS MANAGEMENT SERVICES, INC., and CERTAIN UNDERWRITERS AT LLOYD'S OF LONDON SUBSCRIBING TO COVER NOTE NO. B0507RN2300289 ("Defendants")—stating:

**JURISDICTION AND VENUE**

1. This is an action for breach of insurance policy contract, breach of the covenant of good faith and fair dealing, and for declaratory judgment pursuant to 28 U.S.C. § 2201.

2. Plaintiff designates this as an admiralty and maritime cause of action within the meaning of Fed. R. Civ. P. 9(h). This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1333 because it involves a dispute regarding a marine insurance contract. Plaintiff invokes Rule 9(h), 38(e), and 82 of the Federal Rules of Civil Procedure.

1

3. Venue is proper within the United States District Court for the District of Rhode Island pursuant to 28 U.S.C. § 1391(b)(3), and pursuant the governing insurance policy, which requires venue to be in the District where the assured resides or where the insurance agent resides.

4. All conditions precedent to the filing of this action have occurred, been waived, or have otherwise been complied with.

5. Pursuant to 28 U.S.C. § 2201 and Article III, Section 2 of the United States Constitution, a case or controversy exists and has existed between the Parties since the beginning of this action, such that an action for declaratory judgment is ripe and appropriate.

## **PARTIES**

6. At all times material, Plaintiff GOOD MARINER LLC was and is a limited liability company registered in the State of Rhode Island, was and is organized and existing under the laws of the State of Rhode Island, and has its office and principal place of business located in the State of Rhode Island.

7. At all times material, Defendant ACCELERANT SPECIALTY INSURANCE COMPANY was and is a domestic surplus lines insurer organized and existing under the laws of the State of Arkansas, with its office and principal place of business in the State of Georgia.

8. At all times material, Defendant SEDGWICK CLAIMS MANAGEMENT SERVICES, INC. was and is an Illinois corporation registered in the State of Florida and in the State of Rhode Island, among other states, with its principal place of business located in the State of Tennessee.

9. At all times material, Defendant CERTAIN UNDERWRITERS AT LLOYD'S OF LONDON SUBSCRIBING TO COVER NOTE NO. B0507RN2300289 ("UNDERWRITERS") are and were an unincorporated organization based in the United Kingdom.

10. Under the Policy's terms, Defendants stipulate to service of process at Rubin, Fiorella, Friedman & Mercante, LLP, 630 Third Avenue, 3rd Floor, New York, New York 10017. **Exhibit 1**, page 19.

## FACTS

11. Plaintiff purchased and contracted for a marine insurance policy ("Policy") for the S/Y *FLOW* ("Vessel"), a United-States-flagged, 2013, 60' Gunboat with twin Volvo 29hp diesel engines, and with Hull Number HYMG6002L214. The Vessel is the "Scheduled Vessel" as referenced throughout the Policy. **Exhibit 1**.

12. The Policy's coverage period ran from March 23, 2023 through March 23, 2024. **Exhibit 1**.

13. The Policy's hull coverage is $1,935,000.00. The Policy's hull coverage deductible is $58,050.00. **Exhibit 1**.

14. The Policy's third-party liability coverage is $3,000,000.00, which is subject to a $500.00 or $2,500.00 deductible, where applicable. **Exhibit 1**.

15. The Policy's personal property coverage is $20,000.00, which is subject to a $2,000.00 deductible. **Exhibit 1**.

16. The Policy is an all-risk policy. **Exhibit 1**, page 24.

17. The Policy lists the assured as Plaintiff GOOD MARINER LLC, located at 1 Washington Street, Newport, RI 02840. **Exhibit 1**.

18. The Policy lists Triton Insurance as assured's agent, located at One Washington Street, Newport, RI 02840. **Exhibit 1**.

19. The Policy provides that the Insurance Provider is Accelerant Specialty Insurance Company. The Policy also provides that third-party liability coverage claims under Section B in

excess of $1,000,000.00 is provided by "Lloyd's Syndicates per cover note B0507RN2300289."

**Exhibit 1**.

20.   The Policy's contract was written and provided by Defendant CONCEPT SPECIAL RISKS, LTD., which is evidenced, for example, by the Policy's letterhead and contact information listed toward the bottom right of the Cover Note page, which is Unity House, 2 Station Court, Station Road, Guiseley, LEEDS, LS20 BEY, United Kingdom. **Exhibit 1**.

21.   The following Policy provision is among the provisions in the Policy evidencing and establishing that it is a binding, enforceable contract:

> "2. Insuring Agreement. This is a binding insurance contract between You and Us, incorporating in full the application form signed by You. We will provide the insurance coverage described in this Insuring Agreement, in return for payment to Us of the premium due and compliance by Covered Persons with the provisions, conditions and warranties of this Insuring Agreement." **Exhibit 1**, page 6.

22.   Among the Policy's terms governing the Policy's hull coverage are the following, as outlined below:

> "3. Coverage A, Hull, Machinery, Equipment and Dinghy
>
> If a sum insured is shown for Section A of the Insuring Agreement Declaration Page, We provide coverage for accidental physical loos of or damage to the Scheduled Vessel which occurs during the period of this Insuring Agreement and within the limits set out in the Insuring Agreement Declaration Page, subject to the Insuring Agreement provisions, conditions, warranties, Deductibles and exclusions." **Exhibit 1**, page 6.
>
> . . .
>
> "Reasonable expenses incurred by You in attempting to minimis or mitigate a loss incurred and covered by this Insuring Agreement will be paid by Us whether successful or not. These will be paid in addition to the sum insured under Sections A and F. Our maximum liability for these expenses is 50% of the sum insured under Section A of the Insuring Agreement Declaration Page less the Deductible shown under Sections A and F." **Exhibit 1**, page 6.
>
> . . .

4

"We will pay salvage charges incurred by You in pursuance of 'your duties in the event of a loss' as set out in Section 10 of this Insuring Agreement, up to the limit of the sum insured under Section A of the Insuring Agreement Declaration Page less the Deductible shown under Section A." **Exhibit 1**, page 6.

. . .

"The Deductible shown under Section A of the Insuring Agreement Declaration Page shall apply to each claim under the Insuring Agreement except for claims for actual and/or Constructive or Compromised Total Loss of the Scheduled Vessel, unless arising from a named or numbered Windstorm when the Deductible detailed below shall apply." **Exhibit 1**, page 6.

23.    Among the Policy's terms governing the Policy's third-party liability coverage are the following, as outlined below:

"Coverage B, Third Party Liability

If a sum insured is shown under Section B of the Insuring Agreement Declaration Page, We provide coverage for any sum or sums which You or any other Covered Person become legally liable to pay and shall pay as a result of ownership or operation of Scheduled Vessel." **Exhibit 1**, page 8.

. . .

"We will settle or defend as We deem appropriate any claims or suits brought against You, using attorneys of Our choice where We deem necessary. Our obligations to settle or defend all third party liability claims under this Insuring Agreement ends when the amount We pay for damages, investigation costs, legal expenses and removal of wreck equals the sum insured under this section of the Insuring Agreement." **Exhibit 1**, page 8.

. . .

"The Deductibles shown on the Insuring Agreement Declaration Page shall apply to each third party liability claim." **Exhibit 1**, page 8.

"Coverage B, Extension to include Limited Pollution Coverage

It is hereby noted and agreed that in consideration of the additional premiums charged herein and notwithstanding exclusion (vii) Coverage B, Third Party Liability, We agree to indemnify You for reasonable costs incurred by You in preventing or mitigating a pollution hazard or threat thereof resulting directly from damage to the Scheduled Vessel, where coverage is afforded under this Insuring Agreement, provided always that such pollution hazard or threat thereof:

i. Was sudden, unintentional and unexpected by You.

ii. That the incident commenced during the period of the Insuring Agreement.

iii. It became known to You within 72 hours of its commencement.

iv. Was reported to Us in writing not later than seven days after having become known to You.

v. Was not a result of Your want of due diligence of that or Your managers, servants or agents to prevent or mitigate such pollution hazard to threat thereof.

These reasonable expenses must be incurred within one year from the commencement of the incident giving rise to a claim hereunder. Any amount recoverable hereunder shall form part of the maximum amount recoverable under Coverage B, Third Party Liability and within the Combined Single Limit." **Exhibit 1**, pages 10–11.

24.    Among the Policy's terms governing the Policy's personal property coverage are the following, as outlined below:

"8. Coverage F, Personal Property

If is a sum insured is shown under Section F of the Insuring Agreement Declaration Page, We will cover direct physical loss or damage to personal property from any accidental cause, whilst property is onboard, being loaded onto, or unloaded from the Scheduled Vessel. Our maximum liability in respect of all claims arising from one event is the amount of the sum insured and our maximum liability for any one item, pair or set is US$1,000." **Exhibit 1**, page 13.

. . .

"Claims will be settled on the basis of actual cash value of personal property, less the Insuring Agreement Deductible and any claim made hereunder shall be adjusted in accordance with general principles of average. Where the sum insured is less than the overall actual cash value of the covered property situate on the Scheduled Vessel, We will only pay claims in the ration that such sum insured bears to the overall cash value of the covered property situate on the Scheduled Vessel at the time of the covered loss." **Exhibit 1**, page 13.

. . .

6

"Exclusions to Coverage F

. . .

We will not cover losses due to:

. . .

ii. Breakage of articles of a brittle nature unless caused by the Scheduled Vessel being stranded, sunk, burnt, on fire, or in collision or by stress of weather, burglars or thieves.

iii. Loss of water-skis or diving equipment, unless as a result of fire, or theft following forcible entry, or a total loss of the Scheduled Vessel." **Exhibit 1**, page 13–14.

25.    On May 28, 2023, the Vessel fortuitously and inexplicably caught fire and was consequently destroyed. The Vessel fortuitously and completely burned down due to the fire, resulting in a constructive total loss.

26.    Immediately thereafter, the Vessel's owner, Plaintiff, promptly notified Defendants of the loss and formally submitted a claim ("Hull Claim") for recovery under the Policy, and further, Plaintiff formally submitted a personal property claim ("Personal Property Claim") (collectively, "Claims").

27.    On June 1, 2023, Defendants accepted and formally opened Plaintiff's Claims, issuing to Plaintiff claim number NMA23005550. **Exhibit 2**.

28.    What followed were many email correspondences between Plaintiff and Defendants concerning the loss, its investigation, and the status of Plaintiff's Claims, among various other topics.

29.    The email correspondences concerned Defendant's request to Plaintiff for various pieces of information to assist Defendants in completing their stated "investigation" and to purportedly arrive at their coverage determination. **Composite Exhibit 3**.

7

30. In each instance, regarding Defendants' request for this information, Plaintiff promptly responded and cooperated, having promptly provided to Defendants any and all information and clarification they requested and needed. **Composite Exhibit 3**.

31. The email correspondences also concerned Plaintiff's many follow-ups regarding the status of their Claims, particularly whether Defendants have made a decision as to coverage. **Composite Exhibit 4**.

32. Plaintiff's many follow-up email correspondences to Defendants, dragging on for months on end since the May 28, 2023 date of loss, had delayed responses or effectively non-responses, as Defendants kept claiming their "investigation" and "final tests" remained underway with no apparent end in sight. **Composite Exhibit 4**.

33. Plaintiff had to repeatedly send follow-up correspondences to Defendants to inquire into the status of their promptly and properly submitted Claims, but to no avail and with no indication whatsoever from Defendants as to when, if at all, a coverage determination will be made. **Composite Exhibit 4**.

34. Defendants' responses, if any, were often delayed, requiring repeated follow-up correspondences from Plaintiff. **Composite Exhibit 4**.

35. The last correspondence—via email or through any other medium—received from Defendants was received on November 8, 2023. **Exhibit 5**.

36. To date, as of this filing, no additional emails or updates have been received from Defendants, except for a Reservation of Rights Letter ("ROR Letter") that was suddenly received on April 11, 2024, almost a year after Plaintiff submitted their Claims. **Exhibit 6**. The ROR Letter was issued by counsel on behalf of Defendant ACCELERANT SPECIALTY INSURANCE COMPANY. **Exhibit 6**.

37.    The ROR Letter alleges misrepresentation, alleging that the answers to the Policy's Renewal Questionnaire for named operator Karen McWilliams were misrepresentations that in effect voided the Policy. **Exhibit 6**.

38.    The ROR Letter states the following: "Our initial investigation indicates that some, or all, of Mr. Teale's responses regarding Operator 3, Karen McWilliams, in the Renewal Questionnaire may be misrepresentations that would have attracted an additional premium and/or disqualified Karen McWilliams as an operator." **Exhibit 6**. Specifically, the ROR Letter alleges that the responses pertaining to her date of birth, whether she had any prior "[v]iolations or suspensions[,]" and whether she had a prior criminal record were all inaccurately answered and therefore misrepresentations. **Exhibit 6**.

39.    Contrary to what the ROR Letter alleges, however, the submitted Renewal Questionnaire responses for named operator Karen McWilliams were all accurate, true, and correct. **Exhibit 7**. That is, Karen McWilliams' date of birth is in fact September 29, 1970, and the correct answer to each of the questions is in fact "None."

40.    Neither the ROR Letter, nor Defendant ACCELERANT SPECIALTY INSURANCE COMPANY, nor any of the other Defendants, offer any evidence whatsoever to support their allegation that the Renewal Questionnaire responses for named operator Karen McWilliams amounted to misrepresentations. The ROR Letter makes no mention of any basis whatsoever to support their allegations.

41.    The ROR Letter qualifies its allegations through use of the word "may," stating, "Our initial investigation indicates that some, or all of Mr. Teale's responses regarding Operator 3, Karen McWilliams, in the Renewal Questionnaire *may* be misrepresentations that would have

attracted an additional premium and/or disqualified Karen McWilliams as an operator." (emphasis added). **Exhibit 6**.

42.     To date, as of this filing, and almost a year after the May 28, 2023 date of loss, Defendants have not made a coverage determination with respect to Plaintiff's Hull Claim and Personal Property Claim, and Defendants also continue to keep Plaintiff in the dark with respect to the status or progress of their Hull Claim and Personal Property Claim.

43.     To date, as of this filing, Defendants have not provided their owed $1,935,000.00 hull coverage to Plaintiff with respect to their Hull Claim.

44.     To date, as of this filing, Defendants have not provided their owed $20,000.00 personal property coverage to Plaintiff with respect to their Personal Property Claim.

45.     Moreover, after the fire incident, the totaled Vessel was kept at Nautor Swan Marina in Badalona, Spain, where the fire occurred and where it was thereafter stored in the interim.

46.     In addition to its storage at Nautor Swan Marina, the marina's staff necessarily cleaned up the fire debris at the marina and in the surrounding areas, and further, the marina's staff necessarily transported the Vessel to a safe location to prevent further scattering of debris and to prevent further potential damage to herself or to other vessels. *See, e.g.*, **Exhibit 8**.

47.     Nautor Swan Marina's services, for storage, debris environment cleaning, and transport, among all other services provided, amounted to a cost of €107.852,15 (approximately $117,000.00 USD) as of July 3, 2023 that was incurred by Plaintiff, all stemming from the incident and loss. **Exhibit 9**.

48.     The cost continues to increase as of July 3, 2023, all while continuing to remain outstanding. **Exhibit 9**.

10

49.     Plaintiff and Plaintiff's broker advised Defendants of this (increasing) cost incurred that is owed to third party Nautor Swan Marina.

50.     Defendants refused to cover or pay for the increasing €107.852,15 (approximately $117,000.00 USD) owed to Nautor Swan Marina.

51.     At all times material, Plaintiff complied with all warranties, duties, and obligations under the Policy, including the fire extinguisher warranty, as evidenced by a report showing that the Vessel's fire extinguishers were timely serviced within a year of the Policy and the date of loss. **Exhibit 10**.

52.     Plaintiff's premiums under the Policy were all up-to-date and paid. Plaintiff never missed a premium payment. The premiums under the Policy were never returned to Plaintiff.

53.     Neither Plaintiff nor any of its agents in any way contributed to, or possibly contributed to, the fortuitous loss through any sort of act or omission before or during the fire incident, and all steps were thereafter taken to mitigate the loss as much as possible, particularly in compliance with all duties and obligations under the Policy.

### COUNT I – BREACH OF INSURANCE POLICY CONTRACT – DEFENDANT ACCELERANT SPEICALTY INSURANCE COMPANY – HULL CLAIM

54.     Plaintiff re-alleges and reincorporates Paragraphs 1 – 53 as if they were fully set forth herein.

55.     Defendants have not provided or paid out the Policy's $1,935,000.00 hull coverage, for Plaintiff's timely and proper Hull Claim under the Policy, to cover the constructive total loss suffered by the Vessel due to the fire.

56.     The fire was fortuitous. Although Defendants' ongoing "investigation" has not confirmed the purported precise cause, it appears it was possibly caused by an unexpected, inexplicable battery malfunction.

57.     Defendants have not made a coverage determination or otherwise provided coverage to date, almost a year after the Hull Claim was submitted. Defendants have simply unanswered Plaintiffs' claim submission almost a year later, having not issued coverage or otherwise made a coverage determination.

58.     At all times material, Plaintiff paid all premiums and has complied with all warranties, duties, obligations, and all other conditions and terms under the Policy, including all required steps that are to be taken when submitting a claim (which Plaintiff promptly did). *See, e.g.*, **Exhibit 2** and **Exhibit 3**.

59.     Defendants have not returned to Plaintiff the paid premiums under the Policy.

60.     Defendants therefore materially breached the Policy by failing to provide coverage to Plaintiff for the covered loss for the Hull Claim.

61.     Plaintiff has suffered significant damages, both financially and to the Vessel, due to Defendants' material breach of the Policy by failing to provide Plaintiff their owed hull coverage. Plaintiff, for example, has had to incur significant costs with respect to this claim, including costs associated with retaining counsel for assistance with same, and including significant costs incurred at Nautor Swan Marina, among other damages and costs.

WHEREFORE, Plaintiff respectfully request judgment against Defendant ACCELERANT SPECIALTY INSURANCE COMPANY for breach of contract, under federal admiralty law, and/or New York law where applicable, and under any other applicable law, and for a judgment against Defendant ACCELERANT SPECIALTY INSURANCE COMPANY under applicable federal admiralty law and/or New York law, and under any other applicable law, awarding all attorney's fees, costs, compensatory damages, statutory interest as permitted, all pre-judgment interest as permitted, and all other relief this Court deems to be just and proper.

## COUNT II – BREACH OF INSURANCE POLICY CONTRACT – DEFENDANT ACCELERANT SPEICALTY INSURANCE COMPANY – PERSONAL PROPERTY CLAIM

62.     Plaintiff re-alleges and reincorporates Paragraphs 1 – 53 as if they were fully set forth herein.

63.     Defendants have not provided or paid out the Policy's $20,000.00 personal property coverage, for Plaintiff's timely and proper Personal Property Claim under the Policy, to cover the loss of all personal property and effects suffered due to the Vessel being totally burned down by the fire.

64.     The fire was fortuitous. Although Defendants' ongoing "investigation" has not confirmed the purported precise cause, it appears it was possibly caused by an unexpected, inexplicable battery malfunction.

65.     Defendants have not made a coverage determination or otherwise provided coverage to date for the personal property loss, almost a year after the Personal Property Claim was submitted. Defendants have simply unanswered Plaintiffs' claim submission almost a year later, having not issued coverage or otherwise made a coverage determination.

66.     At all times material, Plaintiff paid all premiums and has complied with all warranties, duties, obligations, and all other conditions and terms under the Policy, including all required steps that are to be taken when submitting a claim (which Plaintiff promptly did). *See, e.g.*, **Exhibit 2** and **Exhibit 3**.

67.     Defendants have not returned to Plaintiff the paid premiums under the Policy.

68.     Defendants therefore materially breached the Policy by failing to provide coverage to Plaintiff for the covered loss for the Personal Property Claim.

69.    Plaintiff has suffered significant damages, both financially and to the Vessel, due to Defendants' material breach of the Policy by failing to provide Plaintiff their owed personal property coverage. Plaintiff, for example, has had to incur significant costs with respect to this claim, including costs associated with retaining counsel for assistance with same, and including significant costs incurred at Nautor Swan Marina, among other damages and costs.

WHEREFORE, Plaintiff respectfully request judgment against Defendant ACCELERANT SPECIALTY INSURANCE COMPANY for breach of contract, under federal admiralty law, and/or New York law where applicable, and under any other applicable law, and for a judgment against Defendant ACCELERANT SPECIALTY INSURANCE COMPANY under applicable federal admiralty law and/or New York law, and under any other applicable law, awarding all attorney's fees, costs, compensatory damages, statutory interest as permitted, all pre-judgment interest as permitted, and all other relief this Court deems to be just and proper.

**COUNT III – BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING - DEFENDANT SEDGWICK CLAIMS MANAGEMENT SERVICES, INC. – HULL CLAIM**

70.    Plaintiff re-alleges and reincorporates Paragraphs 1 – 53 as if they were fully set forth herein.

71.    The facts alleged herein pertain separately and specifically to Defendant SEDGWICK CLAIMS MANAGEMENT SERVICES, INC.'s handling of Plaintiff's Hull Claim under the Policy and are therefore not duplicative.

72.    Defendant SEDGWICK CLAIMS MANAGEMENT SERVICES, INC.—in bad faith and unfair dealing—kept Plaintiff in the dark with respect to the status of their Hull Claim by failing to provide sufficient, timely responses, and by failing to timely provide a decision as to coverage. *See, e.g.*, **Exhibit 4**.

73.    To date, as of this filing, and almost a year after the May 28, 2023 date of loss, Defendant SEDGWICK CLAIMS MANAGEMENT SERVICES, INC. has failed to facilitate, determine, or communicate a coverage decision for Plaintiff's Hull Claim. *See, e.g.*, **Exhibit 4**.

74.    Defendant SEDGWICK CLAIMS MANAGEMENT SERVICES, INC. kept making excuse after excuse, citing, among other things, still-pending "final testing" within their ongoing "investigation," all while failing to provide any further updates on same, let alone any explanation as to the precise nature of same. *See, e.g.*, **Exhibit 4**.

75.    In its efforts to obtain a response and a coverage decision, Plaintiff was forced to send many follow-up correspondences over the course of months to Defendant SEDGWICK CLAIMS MANAGEMENT SERVICES, INC. about the status of its Hull Claim, all to no avail. *See, e.g.*, **Exhibit 4**.

76.    To date, Defendant SEDGWICK CLAIMS MANAGEMENT SERVICES, INC. has in effect stonewalled Plaintiff with no update or developments in sight with respect to the status of Plaintiff's Hull Claim and/or the status of Defendant SEDGWICK CLAIMS MANAGEMENT SERVICES, INC.'s claimed ongoing "investigation." *See, e.g.*, **Exhibit 4**.

77.    The last correspondence Plaintiff has received from Defendant SEDGWICK CLAIMS MANAGEMENT SERVICES, INC. was received on November 8, 2023, **Exhibit 5**, and there is no indication whatsoever Defendant SEDGWICK CLAIMS MANAGEMENT SERVICES, INC. intends to reengage Plaintiffs with regard to the status of their Hull Claim, let alone make a coverage determination.

78.    At all times material, Plaintiff fully cooperated with Defendant SEDGWICK CLAIMS MANAGEMENT SERVICES, INC., having properly submitted its Hull Claim under the Policy's required terms, **Exhibit 2**; having promptly answered all questions posed by

Defendants, including Defendant SEDGWICK CLAIMS MANAGEMENT SERVICES, INC., **Exhibit 3**; and having provided all information, materials, and records to Defendants they requested, **Exhibit 3**.

79.    On top of this conduct, Defendants have not returned to Plaintiff the full premiums Plaintiff paid under the Policy, further evidencing Defendant SEDGWICK CLAIMS MANAGEMENT SERVICES, INC.'s bad faith and unfair dealings with Plaintiff.

80.    Plaintiff has suffered significant damages, both financially and to the Vessel, among other damages, due to Defendant SEDGWICK CLAIMS MANAGEMENT SERVICES, INC.'s bad faith and unfair dealing to Plaintiff. Plaintiff, for example, has had to incur significant costs with respect to this claim, including costs associated with retaining counsel for assistance with same, and including significant costs incurred at Nautor Swan Marina, among other damages.

WHEREFORE, Plaintiff respectfully request judgment against Defendant SEDGWICK CLAIMS MANAGEMENT SERVICES, INC.  for breach of the covenant of good faith and fair dealing under applicable New York law and/or federal admiralty law, where applicable, and under any other applicable law, and for a judgment against Defendant SEDGWICK CLAIMS MANAGEMENT SERVICES, INC. under applicable New York law and/or federal admiralty law, and under any other applicable law, awarding all attorney's fees, costs, compensatory damages, statutory interest as permitted, all pre-judgment interest as permitted, and all other relief this Court deems to be just and proper.

## COUNT IV – BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING - DEFENDANT SEDGWICK CLAIMS MANAGEMENT SERVICES, INC. – PERSONAL PROPERTY CLAIM

81.    Plaintiff re-alleges and reincorporates Paragraphs 1 – 53 as if they were fully set forth herein.

82.    The facts alleged herein pertain separately and specifically to Defendant SEDGWICK CLAIMS MANAGEMENT SERVICES, INC.'s handling of Plaintiff's Personal Property Claim under the Policy and are therefore not duplicative.

83.    Defendant SEDGWICK CLAIMS MANAGEMENT SERVICES, INC.—in bad faith and unfair dealing—kept Plaintiff in the dark with respect to the status of their Personal Property Claim by failing to provide sufficient, timely responses, and by failing to timely provide a decision as to coverage. *See, e.g.*, **Exhibit 4**.

84.    To date, as of this filing, and almost a year after the May 28, 2023 date of loss, Defendant SEDGWICK CLAIMS MANAGEMENT SERVICES, INC. has failed to facilitate, determine, or communicate a coverage decision for Plaintiff's Personal Property Claim. *See, e.g.*, **Exhibit 4**.

85.    Defendant SEDGWICK CLAIMS MANAGEMENT SERVICES, INC. kept making excuse after excuse, citing, among other things, still-pending "final testing" within their ongoing "investigation," all while failing to provide any further updates on same, let alone any explanation as to the precise nature of same. *See, e.g.*, **Exhibit 4**.

86.    In its efforts to obtain a response and a coverage decision, Plaintiff was forced to send many follow-up correspondences over the course of months to Defendant SEDGWICK CLAIMS MANAGEMENT SERVICES, INC. about the status of its Personal Property Claim, all to no avail. *See, e.g.*, **Exhibit 4**.

87.    To date, Defendant SEDGWICK CLAIMS MANAGEMENT SERVICES, INC. has in effect stonewalled Plaintiff with no update or developments in sight with respect to the status of Plaintiff's Personal Property Claim and/or the status of Defendant SEDGWICK CLAIMS MANAGEMENT SERVICES, INC.'s claimed ongoing "investigation." *See, e.g.*, **Exhibit 4**.

88.     The last correspondence Plaintiff has received from Defendant SEDGWICK CLAIMS MANAGEMENT SERVICES, INC. was received on November 8, 2023, **Exhibit 5**, and there is no indication whatsoever Defendant SEDGWICK CLAIMS MANAGEMENT SERVICES, INC. intends to reengage Plaintiffs with regard to the status of their Personal Property Claim, let alone make a coverage determination.

89.     At all times material, Plaintiff fully cooperated with Defendant SEDGWICK CLAIMS MANAGEMENT SERVICES, INC., having properly submitted its Personal Property Claim under the Policy's required terms, **Exhibit 2**; having promptly answered all questions posed by Defendants, including Defendant SEDGWICK CLAIMS MANAGEMENT SERVICES, INC., **Exhibit 3**; and having provided all information, materials, and records to Defendants they requested, **Exhibit 3**.

90.     On top of this conduct, Defendants have not returned to Plaintiff the full premiums Plaintiff paid under the Policy, further evidencing Defendant SEDGWICK CLAIMS MANAGEMENT SERVICES, INC.'s bad faith and unfair dealings with Plaintiff.

91.     Plaintiff has suffered significant damages, both financially and to the Vessel, among other damages, due to Defendant SEDGWICK CLAIMS MANAGEMENT SERVICES, INC.'s bad faith and unfair dealing to Plaintiff. Plaintiff, for example, has had to incur significant costs with respect to this claim, including costs associated with retaining counsel for assistance with same, and including significant costs incurred at Nautor Swan Marina, among other damages.

WHEREFORE, Plaintiff respectfully request judgment against Defendant SEDGWICK CLAIMS MANAGEMENT SERVICES, INC.  for breach of the covenant of good faith and fair dealing under applicable New York law and/or federal admiralty law, where applicable, and under any other applicable law, and for a judgment against Defendant SEDGWICK CLAIMS

MANAGEMENT SERVICES, INC. under applicable New York law and/or federal admiralty law, and under any other applicable law, awarding all attorney's fees, costs, compensatory damages, statutory interest as permitted, all pre-judgment interest as permitted, and all other relief this Court deems to be just and proper.

**COUNT V – BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING - DEFENDANT ACCELERANT SPEICALTY INSURANCE COMPANY – HULL CLAIM**

92.    Plaintiff re-alleges and reincorporates Paragraphs 1 – 53 as if they were fully set forth herein.

93.    The facts alleged herein pertain separately and specifically to Defendant ACCELERANT SPECIALTY INSURANCE COMPANY's handling of Plaintiff's Hull Claim under the Policy are therefore not duplicative.

94.    Defendant ACCELERANT SPECIALTY INSURANCE COMPANY—in bad faith and unfair dealing—kept Plaintiff in the dark with respect to the status of their Hull Claim by failing to provide sufficient, timely responses, and by failing to timely provide a decision as to coverage. *See, e.g.*, **Exhibit 4**.

95.    To date, as of this filing, and almost a year after the May 28, 2023 date of loss, Defendant ACCELERANT SPECIALTY INSURANCE COMPANY has failed to communicate to Plaintiff a coverage decision let alone timely make a decision. *See, e.g.*, **Exhibit 4**.

96.    Defendant ACCELERANT SPECIALTY INSURANCE COMPANY, by and through its administrator, Defendant SEDGWICK CLAIMS MANAGEMENT SERVICES, INC., kept making excuse after excuse, citing, among other things, still-pending "final testing" within their ongoing "investigation," all while failing to provide any further updates on same, let alone any explanation as to the precise nature of same. *See, e.g.*, **Exhibit 4**.

97. In its efforts to obtain a response and a coverage decision, Plaintiff was forced to send many follow-up correspondences to Defendant ACCELERANT SPECIALTY INSURANCE COMPANY about the status of its Hull Claim, all to no avail. *See, e.g.*, **Exhibit 4**.

98. To date, Defendants have in effect stonewalled Plaintiff with no update or developments in sight with respect to the status of Plaintiff's claim and/or the status of Defendant ACCELERANT SPECIALTY INSURANCE COMPANY's claimed ongoing "investigation." *See, e.g.*, **Exhibit 4**.

99. The last correspondence Plaintiff has received from Defendant ACCELERANT SPECIALTY INSURANCE COMPANY, by and through its administrator, Defendant SEDGWICK CLAIMS MANAGEMENT SERVICES, INC., was received on November 8, 2023, **Exhibit 5**, and there is no indication whatsoever Defendants intend to reengage Plaintiffs with regard to the status of their Hull Claim let alone provide a coverage determination.

100. Further, the ROR Letter from Defendant ACCELERANT SPECIALTY INSURANCE COMPANY, received just days ago on April 11, 2024, and almost a year after Plaintiff submitted their Hull Claim, makes unsupported, unsubstantiated claims that Plaintiff misrepresented material facts in its responses to the Policy's Renewal Questionnaire pertaining to named operator Karen McWilliams. **Exhibit 6**.

101. In bad faith and unfair dealing to Plaintiff, the ROR Letter is grossly late, misleading, inaccurate, and in effect continues to keep Plaintiff in the dark with respect to the status of its Hull Claim by not providing an update and/or a coverage determination.

102. At all times material, Plaintiff fully cooperated with Defendant ACCELERANT SPECIALTY INSURANCE COMPANY, having properly submitted its Hull Claim under the

Policy's required terms; having promptly answered all questions posed by Defendants; and having provided all information, materials, and records to Defendants that Defendants requested.

103. On top of this conduct, Defendant ACCELERANT SPECIALTY INSURANCE COMPANY has not returned to Plaintiff the full premiums Plaintiff paid under the Policy, further evidencing Defendant ACCELERANT SPECIALTY INSURANCE COMPANY's bad faith and unfair dealings with Plaintiff.

104. Plaintiff has suffered significant damages, both financially and to the Vessel, among other damages, due to Defendant ACCELERANT SPECIALTY INSURANCE COMPANY's bad faith and unfair dealing to Plaintiff. Plaintiff, for example, has had to incur significant costs with respect to this claim, including costs associated with retaining counsel for assistance with same, and including significant costs incurred at Nautor Swan Marina, among other damages.

WHEREFORE, Plaintiff respectfully request judgment against Defendant ACCELERANT SPECIALTY INSURANCE COMPANY for breach of the covenant of good faith and fair dealing under applicable New York law and/or federal admiralty law, where applicable, and under any other applicable law, and for a judgment against Defendant ACCELERANT SPECIALTY INSURANCE COMPANY under applicable New York law and/or federal admiralty law, and under any other applicable law, awarding all attorney's fees, costs, compensatory damages, statutory interest as permitted, all pre-judgment interest as permitted, and all other relief this Court deems to be just and proper.

**COUNT VI – BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING - DEFENDANT ACCELERANT SPEICALTY INSURANCE COMPANY – PERSONAL PROPERTY CLAIM**

105.    Plaintiff re-alleges and reincorporates Paragraphs 1 – 53 as if they were fully set forth herein.

106.    The facts alleged herein pertain separately and specifically to Defendant ACCELERANT SPECIALTY INSURANCE COMPANY's handling of Plaintiff's Personal Property Claim under the Policy are therefore not duplicative.

107.    Defendant ACCELERANT SPECIALTY INSURANCE COMPANY—in bad faith and unfair dealing—kept Plaintiff in the dark with respect to the status of their Personal Property Claim by failing to provide sufficient, timely responses, and by failing to timely provide a decision as to coverage. *See, e.g.*, **Exhibit 4**.

108.    To date, as of this filing, and almost a year after the May 28, 2023 date of loss, Defendant ACCELERANT SPECIALTY INSURANCE COMPANY has failed to communicate to Plaintiff a coverage decision. *See, e.g.*, **Exhibit 4**.

109.    Defendant ACCELERANT SPECIALTY INSURANCE COMPANY, by and through its administrator, Defendant SEDGWICK CLAIMS MANAGEMENT SERVICES, INC., kept making excuse after excuse, citing, among other things, still-pending "final testing" within their ongoing "investigation," all while failing to provide any further updates on same, let alone any explanation as to the precise nature of same. *See, e.g.*, **Exhibit 4**.

110.    In its efforts to obtain a response and a coverage decision, Plaintiff was forced to send many follow-up correspondences to Defendant ACCELERANT SPECIALTY INSURANCE COMPANY about the status of Personal Property Claim, all to no avail. *See, e.g.*, **Exhibit 4**.

111.    To date, Defendants have in effect stonewalled Plaintiff with no update or developments in sight with respect to the status of Plaintiff's Personal Property Claim and/or the

status of Defendant ACCELERANT SPECIALTY INSURANCE COMPANY's claimed ongoing "investigation." *See, e.g.*, **Exhibit 4**.

112.    The last correspondence Plaintiff has received from Defendant ACCELERANT SPECIALTY INSURANCE COMPANY, by and through its administrator, Defendant SEDGWICK CLAIMS MANAGEMENT SERVICES, INC., was received on November 8, 2023, **Exhibit 5**, and there is no indication whatsoever Defendants intend to reengage Plaintiffs with regard to the status of their Personal Property Claim let alone provide a coverage determination.

113.    Further, the ROR Letter from Defendant ACCELERANT SPECIALTY INSURANCE COMPANY, received just days ago on April 11, 2024, and almost a year after Plaintiff submitted their Personal Property Claim, makes unsupported, unsubstantiated claims that Plaintiff misrepresented material facts in its responses to the Policy's Renewal Questionnaire pertaining to named operator Karen McWilliams. **Exhibit 6**.

114.    In bad faith and unfair dealing to Plaintiff, the ROR Letter is grossly late, misleading, inaccurate, and in effect continues to keep Plaintiff in the dark with respect to the status of its Personal Property Claim by not providing an update and/or a coverage determination.

115.    At all times material, Plaintiff fully cooperated with Defendant ACCELERANT SPECIALTY INSURANCE COMPANY, having properly submitted its Personal Property Claim under the Policy's required terms; having promptly answered all questions posed by Defendants; and having provided all information, materials, and records to Defendants that Defendants requested.

116.    On top of this conduct, Defendant ACCELERANT SPECIALTY INSURANCE COMPANY has not returned to Plaintiff the full premiums Plaintiff paid under the Policy, further

evidencing Defendant ACCELERANT SPECIALTY INSURANCE COMPANY's bad faith and unfair dealings with Plaintiff.

117.   Plaintiff has suffered significant damages, both financially and to the Vessel, among other damages, due to Defendant ACCELERANT SPECIALTY INSURANCE COMPANY's bad faith and unfair dealing to Plaintiff. Plaintiff, for example, has had to incur significant costs with respect to this claim, including costs associated with retaining counsel for assistance with same, and including significant costs incurred at Nautor Swan Marina, among other damages.

WHEREFORE, Plaintiff respectfully request judgment against Defendant ACCELERANT SPECIALTY INSURANCE COMPANY  for breach of the covenant of good faith and fair dealing under applicable New York law and/or federal admiralty law, where applicable, and under any other applicable law, and for a judgment against Defendant ACCELERANT SPECIALTY INSURANCE COMPANY under applicable New York law and/or federal admiralty law, and under any other applicable law, awarding all attorney's fees, costs, compensatory damages, statutory interest as permitted, all pre-judgment interest as permitted, and all other relief this Court deems to be just and proper.

## COUNT VII – DECLARATORY JUDGMENT AGAINST DEFENDANT ACCELERANT SPEICALTY INSURANCE COMPANY PURSUANT TO 28 U.S.C. § 2201

118.   Plaintiff re-alleges and reincorporates Paragraphs 1 – 53 as if they were fully set forth herein.

119.   A controversy exists, or will exist, between the parties as to their respective rights under the Policy.

120.    Under the Policy, Defendant ACCELERANT SPECIALTY INSURANCE COMPANY provides third party liability coverage to Plaintiff in an amount up to $1,000,000.00. **Exhibit 1**, page 2.

121.    Plaintiff has not breached any warranties under the Policy, and Plaintiff has complied with all required duties and obligations under the Policy, including timely payment of all premiums.

122.    Plaintiff has incurred €107.852,15 (approximately $117,000.00 USD) as of July 3, 2023 from third party Nautor Swan Marina, an increasing amount, due to the Vessel's storage, clean up, and necessary transport, all resulting from the May 28, 2023 fire loss incident. **Exhibit 9**.

123.    If third party Nautor Swan Marina, or any other third party, sues Plaintiff and/or the Vessel to recover this owed amount, Coverage B under the Policy requires Defendant ACCELERANT SPECIALTY INSURANCE COMPANY to provide third-party liability coverage to Plaintiff and/or the Vessel to settle or defend against any such suits. Plaintiff and/or the Vessel would be contractually owed this coverage—up to $1,000,000.00—under the Policy's express, binding, and enforceable terms. **Exhibit 1**, page 2.

124.    Defendant ACCELERANT SPECIALTY INSURANCE COMPANY's conduct to date, however, has created genuine doubt or uncertainty as to Plaintiff's rights or status under the Policy with respect to third-party liability coverage, to the extent third party Nautor Swan Marina or any other third party sues Plaintiff for the amount owed or for any other cause related to the May 28, 2023 fire loss incident. Among Defendant ACCELERANT SPECIALTY INSURANCE COMPANY's conduct giving rise to this doubt or uncertainty, and as alleged and outlined above,

is their failure to provide Plaintiff its contractually owed hull coverage and their failure to communicate the status of Plaintiff's claim.

125.    Plaintiff therefore seeks a declaration of its rights under the Policy with respect to third-party liability coverage, particularly in the event that a suit is filed against Plaintiff for the outstanding Nautor Swan Marina expenses and for any other owed third-party expenses or potential third-party liability stemming from the incident.

WHEREFORE, pursuant to 28 U.S.C. § 2201 and all other applicable laws, statutes, standards, and Rules, Plaintiff respectfully requests a judgment against Defendant ACCELERANT SPECIALTY INSURANCE COMPANY declaring that Plaintiff is entitled to third-party liability coverage under the Policy up to $1,000,000.00 where needed with respect to this matter, and further, Plaintiff respectfully requests a judgment against Defendant ACCELERANT SPECIALTY INSURANCE COMPANY awarding to Plaintiff, under applicable New York law, federal admiralty law, and/or all other applicable law, attorney's fees, costs, compensatory damages, statutory interest as permitted, all pre-judgment interest as permitted, and/or all other relief that this Court deems to be just and proper.

**COUNT VIII – DECLARATORY JUDGMENT AGAINST DEFENDANT CERTAIN UNDERWRITERS AT LLOYD'S OF LONDON SUBSCRIBING TO COVER NOTE NO. B0507RN2300289 ("UNDERWRITERS") PURSUANT TO 28 U.S.C. § 2201**

126.    Plaintiff re-alleges and reincorporates Paragraphs 1 – 53 as if they were fully set forth herein.

127.    A controversy exists, or will exist, between the parties as to their respective rights under the Policy.

128.    Under the Policy, Defendant UNDERWRITERS provides third party liability coverage to Plaintiff in an amount in excess of $1,000,000.00. **Exhibit 1**, page 2.

129. Plaintiff has not breached any warranties under the Policy, and Plaintiff has complied with all required duties and obligations under the Policy, including timely payment of all premiums.

130. Plaintiff has incurred €107.852,15 (approximately $117,000.00 USD) as of July 3, 2023 from third party Nautor Swan Marina, an increasing amount, due to the Vessel's storage, clean up, and necessary transport, all resulting from the May 28, 2023 fire loss incident. **Exhibit 9**.

131. If third party Nautor Swan Marina, or any other third party, sues Plaintiff and/or the Vessel to recover this owed amount, Coverage B under the Policy requires Defendant UNDERWRITERS to provide third-party liability coverage, for an amount in excess of $1,000,000.00, to Plaintiff and/or the Vessel to settle or defend against any such suits. Plaintiff and/or the Vessel would be contractually owed this coverage under the Policy's express, binding, and enforceable terms. **Exhibit 1**, page 2.

132. However, Defendants and Defendant ACCELERANT SPECIALTY INSURANCE COMPANY's conduct—and by extension, Defendant UNDERWRITERS' conduct—has created genuine doubt or uncertainty as to Plaintiff's rights or status under the Policy with respect to third-party liability coverage in excess of $1,000,000.00, to the extent that third party Nautor Swan Marina or any other third party sues Plaintiff for the increasing amount owed or for any other cause related to the May 28, 2023 fire loss incident. Among Defendants and Defendant ACCELERANT SPECIALTY INSURANCE COMPANY's conduct—and by extension, Defendant UNDERWRITERS' conduct—giving rise to this doubt or uncertainty, and as alleged and outlined above, is their failure to provide Plaintiff its contractually owed hull coverage and their failure to communicate the status of Plaintiff's claim.

133.    Plaintiff therefore seeks a declaration of its rights under the Policy with respect to third-party liability coverage, particularly in the event that a suit is filed against Plaintiff for the outstanding Nautor Swan Marina expenses and for any other owed third-party expenses or potential third-party liability stemming from the incident.

WHEREFORE, pursuant to 28 U.S.C. § 2201 and all other applicable laws, statutes, standards, and Rules, Plaintiff respectfully requests a judgment against Defendant UNDERWRITERS declaring that Plaintiff is entitled to third-party liability coverage in excess of $1,000,000.00 under the Policy where needed with respect to this matter, and further, Plaintiff respectfully requests a judgment against Defendant UNDERWRITERS awarding to Plaintiff, under applicable New York law, federal admiralty law, and/or all other applicable law, attorney's fees, costs, compensatory damages, statutory interest as permitted, all pre-judgment interest as permitted, and/or all other relief that this Court deems to be just and proper.

Dated: April 16, 2024                                    GOOD MARINER LLC,
                                                         *By its Attorneys,*


                                                         */s/ Peter Brent Regan*
                                                         Peter Brent Regan (#3421)
                                                         Michael E. Monti (#10095)
                                                         Sayer Regan n& Thayer, LLP
                                                         130 Bellevue Avenue
                                                         Newport, RI 02840
                                                         (401) 849-3040
                                                         pregan@srt-law.com
                                                         mmonti@srt-law.com

*Pro Hac Vice Counsels [Pending]*
Michael T. Moore, Esq.
Gabriel A. Pla, Esq.
225 Aragon Avenue
Third Floor
Coral Gables, FL 33134
(786) 221-0600
gpla@moore-and-co.com
michael@moore-and-co.com